T.C. Memo. 1998-86

UNITED STATES TAX COURT

PEPI SCHAFLER, F.K.A PEPI SUMMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24158-96.                    Filed February 26, 1998.

Pepi Schafler, pro se.

<u>Roger Bracken</u>, for respondent.


MEMORANDUM OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.[1]  Respondent determined a deficiency in

---

[1]  All section references are to the Internal Revenue Code
in effect during the year in issue, unless otherwise indicated.
All Rule references are to the Tax Court Rules of Practice and
Procedure.

petitioner's 1992 Federal income tax in the amount of $4,158 and an addition to tax under section 6651(a) in the amount of $1,039. After concessions by respondent,[2] the issues remaining for decision are: (1) Whether petitioner is entitled to deduct a theft loss claimed on her return; (2) whether petitioner is entitled to deduct legal fees claimed on her return in excess of the amount allowed by respondent; (3) whether petitioner is entitled to deduct medical expenses claimed on her return in excess of the amount allowed by respondent; (4) whether petitioner is entitled to deduct charitable contributions claimed on her return in excess of the amount allowed by respondent; and (5) whether petitioner is subject to the addition to tax under section 6651(a) for failure to file a timely return.

Background

For convenience, we have combined the findings of fact and discussion of pertinent legal issues. Some of the facts have been stipulated, and they are so found. At the time that the petition was filed, petitioner resided at North Bethesda, Maryland.

Petitioner signed her 1992 Federal income tax return on December 14, 1993, and respondent received it on December 17,

---

[2] Respondent concedes that: (1) Petitioner paid medical expenses in the amount of $2,002, and (2) petitioner is entitled to a miscellaneous itemized deduction for the cost of a safe deposit box in the amount of $65. Respondent made concessions as to other deductions. These concessions are set forth in the discussions relating to the specific issues.

1993. Petitioner's return contained numerous mathematical errors. Petitioner reported adjusted gross income in the amount of $32,508.46, while the proper amount should have been $31,463.28. Petitioner claimed expenses on Schedule A in the amount of $23,517, but did not claim these expenses on line 34 of her return (Form 1040). Instead, petitioner claimed a standard deduction in the amount of $3,000. Respondent corrected the return to reflect the claimed Schedule A expenses on line 34 in lieu of the standard deduction. Lastly, petitioner reported taxable income in the amount of $27,208.46, but her return reflects no income tax liability and requests a refund in the amount of $68.54. After making corrections to petitioner's return, respondent made a computational assessment in the amount of $844. Sec. 6213(b).

Upon examination, respondent disallowed all of the expenses claimed by petitioner on Schedule A of her return. The expenses remaining in issue, after concessions by respondent, are as follows:

| Expense | Amount Claimed on Return | Amount Allowed | Amount in Issue |
| --- | --- | --- | --- |
| Theft loss | $8,660 | -0- | $8,660 |
| Legal fees | 13,793 | $7,278 | 6,515 |
| Medical expense | 4,974 | 2,002 | 2,972 |
| Charitable contribution | 2,260 | 640 | [1]2,296 |

[1] Although petitioner claimed a deduction for charitable contributions in the amount of $2,260 on her return, the record contains a list of petitioner's purported contributions totaling $2,936.

Discussion

We begin by noting that petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving that she is entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

1. Theft Loss

Petitioner traveled to Florida for several weeks from December 1992 through January 1993. Included in her belongings were several pieces of jewelry. In early January 1993, petitioner noticed that some of her jewelry was missing. On Schedule A of her 1992 return, petitioner claimed a theft loss in the amount of $8,660, which respondent reduced by computational adjustment to $5,414. Upon examination, respondent disallowed the entire theft loss claimed by petitioner. Petitioner argues that she is entitled to a deduction with respect to the theft loss in the amount of $8,660.

Individual taxpayers may deduct losses arising from fire, storm, shipwreck, or other casualty, or from theft, if the loss is sustained during the taxable year and not compensated by insurance or otherwise. Sec. 165(a), (c)(3). Personal casualty or theft losses are deductible to the extent that the losses, as

reduced by $100 per casualty, exceed 10 percent of adjusted gross income.  Sec. 165(h)(1) and (2).  The term "other casualty" refers to losses arising from sudden and unexpected events.  White v. Commissioner, 48 T.C. 430, 435 (1967).  A taxpayer is not entitled to claim a theft loss pursuant to section 165 with respect to lost or misplaced property.  See Sussel v. Commissioner, T.C. Memo. 1966-243 (disallowing theft loss where evidence indicated bracelet might have been lost rather than stolen).  Where it is established that a theft loss has occurred, the taxpayer must treat the loss as sustained in the year in which the loss is discovered.  Sec. 165(e).

To meet her burden of proof on this issue, petitioner must establish that a theft or other casualty occurred.  Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973).  At trial, petitioner testified that she was not sure whether her jewelry was stolen, lost, or misplaced.  On the basis of the record before us, we conclude that petitioner has failed to prove that any theft or other casualty occurred with respect to her missing jewelry.[3]  For that reason, petitioner is not

---

[3]  We also note that even if petitioner was able to establish that her jewelry was stolen, she would be entitled to a deduction, if at all, for the taxable year 1993, the year in which she discovered the theft, rather than for the year in issue.  McKinley v. Commissioner, 34 T.C. 59, 63 (1960).

entitled to a deduction under section 165. Accordingly, we sustain respondent on this issue.

 2. Legal Expenses

Petitioner filed for divorce from her former husband, Donald Summer, in September 1986. The divorce proceedings were acrimonious, and petitioner and Mr. Summer disputed the property of the marital estate. As a result, petitioner, Mr. Summer, and their respective attorneys devoted a great deal of time and effort in an attempt to reach a property settlement agreement, which had not been finalized as of the taxable year in issue.

Petitioner's 1992 return reflects alimony received in the amount of $19,000.[4] Schedule A of petitioner's 1992 return reflects legal expenses paid in the amount of $13,793. The parties have stipulated that petitioner is entitled to deduct as legal expenses $7,278 paid to the law firm of McGee & Gelman in connection with petitioner's lawsuit against Marine Midland Bank. At trial, petitioner argued that she is entitled to deduct additional legal expenses paid to McGee & Gelman in the amount of $2,122. Given the parties' stipulation and the lack of additional evidence in the record, we conclude that petitioner is

---

[4] By order of the State of New York Supreme Court for the County of Erie, dated Oct. 25, 1989, petitioner was entitled to receive $500 per week for temporary maintenance during pendency of the divorce action.

entitled to deduct as legal expenses payments made to McGee & Gelman in the amount of $7,278.

The expenses remaining in issue in the amount of $6,515 were paid to the law firm Birzon & Zakia with regard to petitioner's divorce action against her former husband. Section 212 permits deductions for all ordinary and necessary expenses paid or incurred for the production of income, or for the management, conservation, or maintenance of property held for the production of income. Generally, attorney's fees and other costs paid in connection with a divorce, separation, or decree for support are personal expenses which are nondeductible by either spouse. Sec. 1.262-1(b)(7), Income Tax Regs. The regulations further provide, however, that legal fees paid by a taxpayer are deductible pursuant to section 212 insofar as they are attributable to the production or collection of taxable alimony payments. Id.; see also Hesse v. Commissioner, 60 T.C. 685, 693-694 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975).

Petitioner argues that the legal expenses in issue were paid in order to secure alimony owed to her by her former husband and are, therefore, deductible. At trial, petitioner offered as evidence the billing records of Birzon & Zakia. Petitioner explained that, in accordance with the laws of the State of New York, a party in a divorce proceeding must establish entitlement to alimony by proving that he or she maintained a certain lifestyle during the course of the marriage. Petitioner further

explained that many of the billing records in question relate to a 3-day trial which primarily concerned petitioner's entitlement to alimony.

The billing records in question are not sufficient to allow us to ascertain with precision those legal fees which are attributable to petitioner's alimony income.  Nevertheless, the record reflects that petitioner paid legal fees in the amount of $9,845 to Birzon & Zakia during the taxable year in issue.  Moreover, petitioner's divorce was contentious, and the question of alimony payments was at issue in the divorce proceedings.  See Summer v. Summer, 85 N.Y.2d 1014, 654 N.E.2d 1218 (1995) (considering petitioner's award of maintenance in connection with divorce proceedings).  Furthermore, because petitioner's return reflects taxable alimony received during 1992 in the amount of $19,000, we are satisfied that a portion of petitioner's legal fees is allocable to alimony.  Relying upon the principles enunciated in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we conclude that $3,000 of petitioner's legal fees is attributable to the production or collection of taxable alimony; therefore, petitioner is entitled to a deduction in that amount. See Feldman v. Commissioner, T.C. Memo. 1991-153.

### 3. Medical Expenses

During the taxable year in issue, petitioner incurred various expenses for medical treatment and health insurance. Respondent has conceded that petitioner paid expenses for medical

care in the amount of $716 and for health insurance provided through the Greater Buffalo Chamber of Commerce in the amount of $1,286. Therefore, remaining in issue are medical expenses in the amount of $2,972.

Section 213 in relevant part provides:

> SEC. 213(a). Allowance of Deduction.--There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income.

The taxpayer must substantiate any deductions claimed under section 213 by furnishing the name and address of each person to whom payment for medical expenses was made and the amount and date for each such payment. Moreover, the taxpayer must be prepared to substantiate any claimed deductions by furnishing statements or itemized invoices from the individual or entity to which payment for medical expenses was made. These statements or invoices should indicate the nature of the service rendered, and to or for whom rendered. Blackburn v. Commissioner, T.C. Memo. 1982-529; sec. 1.213-1(h), Income Tax Regs.

A portion of the medical expenses remaining in issue is related to the cost of petitioner's transportation and lodging with regard to medical treatment received in Boston. The record reflects that petitioner received medical treatment at Beth Israel Hospital in Boston on July 7, 1992. Petitioner traveled from her home in Buffalo to Boston to receive treatment by

specialists recommended to her.  The record does not reflect the amount paid by petitioner for this treatment, or the date on which petitioner rendered the payment.  On July 8, 1992, petitioner was treated at Boston Orthopedic Group, Inc. (BOG), in Brookline, Massachusetts.  Included in the expenses allowed by respondent is a check in the amount of $125 written to BOG.  Respondent did not allow petitioner to deduct any expenses with respect to her treatment at Beth Israel.

The record reflects that petitioner incurred expenses for transportation and lodging with respect to her stay in Boston from July 4 to July 8, 1992.  To prove that she is entitled to deduct her transportation expense, petitioner must establish that her travel was "primarily for and essential to" her medical care.  Sec. 213(d)(1)(B).  We find credible petitioner's testimony, corroborated by documents in the record, that she traveled to Boston for the purpose of receiving medical treatment.  Therefore, petitioner is entitled to deduct the cost of her transportation between Boston and Buffalo ($223).

We now turn to the expenses claimed with respect to lodging.  To establish entitlement to expenses for lodging, a taxpayer must prove that there is no significant element of personal pleasure, recreation, or vacation in the travel.  Sec. 213(d)(2)(B).  In addition, the taxpayer must prove that the travel was primarily for and essential to medical care provided by a physician in a licensed hospital (or a medical care facility which is related

to, or the equivalent of, a licensed hospital).  Sec. 213(d)(2)(A).

Although we have concluded that petitioner traveled to Boston with the primary motive of receiving medical care, the record reflects that petitioner received medical treatment at a licensed hospital on July 7, 1992, and orthopedic treatment on July 8, 1992, while the expenses in issue concern lodging from the night of July 4 through July 7, 1992.  On the basis of the record before us, we conclude that two of the four nights' lodging were essential to petitioner's medical care. Accordingly, we will allow petitioner to deduct expenses for lodging in the amount of $100, attributable to lodging for two nights at a rate of $50 per night.  See sec. 213(d)(2) (limiting deduction for lodging to $50 per night).

With respect to petitioner's claims for the expenses relating to her treatment at Beth Israel Hospital in Boston, petitioner has offered no evidence of the amount and date of any payment for such services.  Petitioner, therefore, has failed to meet the substantiation requirements provided by section 1.213-1(h), Income Tax Regs.  Furthermore, we are unsure as to whether the cost of this treatment was covered in whole or in part by petitioner's health insurance.  See Cooper v. Commissioner, T.C. Memo. 1987-334.  Therefore, we conclude that petitioner is not entitled to any deduction for expenses related to her treatment at Beth Israel Hospital.

Petitioner has failed to offer evidence concerning the medical treatment underlying the expenses remaining in issue. Petitioner, therefore, has failed to meet her burden of proof with respect to the remaining expenses, and we sustain respondent's determination to that extent.

4. Charitable Contributions

On her return, petitioner claimed a deduction for charitable contributions in the amount of $2,260.  The return reflects cash contributions in the amount of $890 and contributions other than cash in the amount of $1,370.  Petitioner submitted a list, prepared before her examination by respondent's agent, of the charitable contributions which she purportedly made during the taxable year.  The total amount reflected on this list, $2,936, exceeds by $676 the amount claimed on her return.[5]  To substantiate the deductions claimed, petitioner submitted canceled checks, letters from charitable organizations, and notes prepared before trial consisting of her estimation of the fair market value of donated property; however, these materials relate to only a portion of the deductions claimed.  Respondent has allowed petitioner to deduct cash contributions in the amount of $145 and noncash contributions in the amount of $495. Petitioner's claimed contributions, as reflected by her list and by other items in the record, are as follows:

---

[5]  Although petitioner's list indicates a total of $2,926, the sum of the items listed is $2,936.

|  | Amount | Amount |
|---|---|---|

Allowed

Contributions by Cash or Check

|  | Amount | Amount |
|---|---|---|
| University of Buffalo<br>  School of Architecture | $150 | |
| Planned Parenthood | 30 | |
| Temple Sinai | 10 | |
| Jewish Review | 20 | |
| Amherst Police Club | 10 | |
| Buffalo Council on World Affairs | 100 | |
| March of Dimes | 100 | |
| Greater Buffalo Chamber of Commerce | 225 | |
| Buffalo Museum of Science | 26 | |
| Albright Knox Art Museum | 35 | |
| NCCL[1] | 25 | |
| | 731 | $145 |

Contributions of Property

|  | Amount | Amount |
|---|---|---|
| Child & Family Services | $50 | |
| Erie County Medical Center | 125 | |
| Ronald McDonald House | 100 | |
| Salvation Army | 975 | |
| | 1,250 | 495 |

Unspecified[2]

|  | Amount | Amount |
|---|---|---|
| Temple Sinai dues | $400 | |
| University of Buffalo | 30 | |
| United Fund | 25 | |
| Buffalo Philharmonic | 60 | |
| Metropolitan Museum | 35 | |
| United Jewish Fund | 350 | |
| Operation Exodus | 50 | |
| American Heart Association | 5 | |
| Womens (sic) ORT | 25 | -0- |
| | 980 | |
| Total | [1] 2,961 | 640 |

[1]   Although the record contains a canceled check with respect to this item, petitioner's list of charitable contributions claimed on her return does not appear to reflect it.  After this item is added to petitioner's list, her total deductions claimed for charitable contributions is $2,961.

[2] Petitioner offered no written substantiation or detailed testimony with respect to these items.

Section 170(a) allows as a deduction any charitable contribution which is made within the taxable year. A charitable contribution is a contribution or gift for the use of an organization described in section 170(c). If the contribution is made in property other than money, the amount of the contribution is the fair market value of the property. Sec. 1.170A-1(c)(1), Income Tax Regs.

A taxpayer making a charitable contribution is required to keep a canceled check, a receipt from the donee organization, or some other reliable written record showing the name of the donee, the date of the contribution, and the amount of the contribution. Cavalaris v. Commissioner, T.C. Memo. 1996-308; sec. 1.170A-13(a)(1), Income Tax Regs. The reliability of a written record is to be determined on the basis of all the facts and circumstances of a particular case. Sec. 1.170A-13(a)(2)(i), Income Tax Regs. Factors indicating that a written record is reliable include the contemporaneous nature of the writing and the regularity of the taxpayer's recordkeeping procedure. Id.

With respect to the claimed charitable contributions listed above as "unspecified", petitioner has offered no reliable written records or testimony. Similarly, with respect to the claimed contributions of property, petitioner has offered no reliable written records or testimony to establish that she is

entitled to a deduction in excess of the amount allowed by respondent. We, therefore, sustain respondent's determination insofar as it relates to those items.

With respect to petitioner's claimed charitable contributions in cash or by check, it is not entirely clear from the record which items serve as the basis of respondent's allowance. Two items, purported donations to the University of Buffalo School of Architecture and Planning and to the March of Dimes, are not substantiated by a check or letter from the donee which reflects the amount of the donation; therefore, petitioner has failed to meet her burden of proof with respect to those items. Rule 142(a). Moreover, petitioner has not proven that the following payees indicated on checks and credit card receipts reflected in the record were qualified donees for purposes of section 170(c): Jewish Review, Amherst Police Club, Buffalo Museum of Science, NCCL, and the Greater Buffalo Chamber of Commerce. Petitioner, therefore, is not entitled to a deduction with regard to those items. Although petitioner has met her burden of proof with respect to the remaining items in dispute, the total amounts reflected on those checks do not exceed the amount allowed by respondent. Accordingly, we sustain respondent's determination on this issue to that extent.

5. <u>Addition to Tax Under Section 6651(a)</u>

We now address respondent's determination that petitioner is liable for the addition to tax under section 6651(a) for failure

to file a timely return.  Generally, individual income tax returns must be filed on or before the 15th day of April following the close of the calendar year.  Sec. 6072(a).  Section 6081, however, provides that the Secretary may grant a taxpayer an extension to file for no greater than 6 months.  Section 1.6081-4(a), Income Tax Regs., provides that taxpayers, upon meeting certain requirements, shall be allowed an automatic 4-month extension.  A taxpayer may seek an additional 2-month extension by submitting, to the internal revenue officer with whom the return is required to be filed, a signed Form 2688 or a letter setting forth the full reasons for the extension.  Perry v. Commissioner, T.C. Memo. 1990-228; sec. 1.6081-1(b)(1), (5), Income Tax Regs.

Section 6651(a)(1) provides for an addition to tax for failure to file a timely return.  A taxpayer may avoid the addition to tax by establishing that the failure to file a timely return was due to reasonable cause and not willful neglect.  Rule 142(a); United States v. Boyle, 469 U.S. 241, 245-246 (1985). The addition to tax is equal to 5 percent of the amount required to be shown as tax on the return, with an additional 5 percent for each additional month or fraction thereof that the return is filed late, not exceeding 25 percent in the aggregate.  For purposes of determining the number of months in which the return is filed late, the date of filing is the date on which the return

is received by the Commissioner.  <u>Pryor v. Commissioner</u>, T.C.
Memo. 1994-287.

Petitioner argues that reasonable cause existed with respect
to her failure to file a timely return because many of the
documents she needed to file the return were held by the court in
connection with her divorce proceedings.  Despite petitioner's
assertion, the record reflects that petitioner's divorce
proceedings did not end until 1995, long after petitioner filed
her return in December 1993.  Furthermore, petitioner could have
retained copies of the documentation related to her 1992 return
before submitting originals to the court which handled her
divorce matter.  We conclude that petitioner is liable for the
addition to tax under section 6651(a).

We now turn to the calculation of the addition to tax.  The
record contains petitioner's Form 4868, "Application for
Automatic Extension of Time To File U.S. Individual Income Tax
Return", dated April 12, 1993, in which petitioner requested an
extension to file until November 1, 1993.  Pursuant to section
1.6081-4(a), Income Tax Regs., however, the automatic extension
is for a period of 4 months.  The record does not contain a
request for an extension for an additional 3 months.  Therefore,
petitioner's return was due on August 15, 1993.[6]  Since

---

[6]  We note that petitioner's request for an automatic
extension does not indicate any amount estimated as tax owed for
the taxable year.  We have previously ruled that requests for
(continued...)

petitioner's return is deemed to have been filed on December 17, 1993, the date it was received by respondent, the return was filed late for a period of 4 months and a portion of a fifth month. Accordingly, we sustain respondent's determination that petitioner is liable for the maximum addition to tax under section 6651(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[6](...continued) extension are invalid where the taxpayer failed to properly estimate the amount of tax owed for the taxable year. <u>Crocker v. Commissioner</u>, 92 T.C. 899, 910 (1989). Since the validity of the application for automatic extension does not affect the calculation of the addition to tax in this case, we need not, and do not, consider this issue.