T.C. Summary Opinion 2016-7

UNITED STATES TAX COURT

JOSE G. HENAO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23394-12S.                      Filed February 8, 2016.

<u>Andrew R. Roberson</u> and <u>Kristina M. Gordon</u>, for petitioner.

<u>D. Anthony Abernathy</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant

to section 7463(b), the decision to be entered is not reviewable by any other court,

and this opinion shall not be treated as precedent for any other case.  Unless

otherwise indicated, all section references are to the Internal Revenue Code of 1986, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's 2009 and 2010 Federal income tax of $3,758 and $5,443, respectively, and an accuracy-related penalty under section 6662(a) of $1,088 for 2010. Petitioner filed a timely petition seeking redetermination of the deficiencies. After concessions,[1] the issues for decision are: (1) whether petitioner is entitled to deductions for unreimbursed employee business expenses for 2009 and 2010 in amounts greater than those allowed by respondent; (2) whether petitioner is entitled to charitable contribution deductions for 2009 and 2010 in amounts greater than those allowed by respondent; (3) whether petitioner is entitled to a credit under section 25A for 2009; and (4) whether petitioner is liable for an accuracy-related penalty under section 6662(a) for 2010.

---

[1]Petitioner concedes additions to adjusted gross income of $507 for additional wages, salaries, tips, etc. for 2009 and of $4,390 and $1,848 for 2009 and 2010, respectively, for taxable Social Security benefits. Respondent concedes that petitioner is entitled to an additional charitable contribution deduction of $2,000 for 2010.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Hawaii.

On his 2009 Federal income tax return, petitioner reported $59,772 of adjusted gross income and claimed itemized deductions of $28,491, including employee business expenses and charitable contributions. On his 2010 Federal income tax return, petitioner reported $189,262 of adjusted gross income and claimed itemized deductions of $63,150, including employee business expenses and charitable contributions.

### Employee business expenses

During the years in issue, petitioner was employed as a sales associate at Wyndham Vacation Resorts, Inc. (Wyndham), in Honolulu, Hawaii, where he marketed timeshares and was compensated on a commission basis. Petitioner employed a variety of methods to attract prospective buyers and complete sales, including holding open houses, cold calling, working with local travel agencies for referrals of Honolulu visitors, and providing prospective buyers with various incentives to attend timeshare presentations.

Wyndham provided office space for temporary use by its sales associates to meet with potential buyers but did not provide petitioner office space to make telephone calls to potential customers. Petitioner did some of his work at his residence, including paperwork, telephone followups with potential customers, and cold calling.

Petitioner claimed unreimbursed employee expense deductions in connection with his employment with Wyndham of $17,138 and $35,484 for 2009 and 2010, respectively.[2] The notice of deficiency disallowed all but $1,560 for each year, citing a failure by petitioner to establish the payment or business purpose of these amounts. Petitioner contends that the disallowed amounts included deductible amounts he has adequately substantiated, specifically: (1) office rent; (2) customer referral payments to travel agents for initial referrals of timeshare customers and for referrals that resulted in sales; (3) customer incentives to attract prospective customers and to discourage cancellation of timeshare purchases; (4) shipping; (5) continuing education; (6) telephone; and (7) air travel.

---

[2]The Forms 2106, Employee Business Expenses, that were attached to the returns are not included in the record.

Office rent

Petitioner wrote five checks for $800 each to "Seven Island Corp." at one-month intervals from January to May 2009. Written on the memo line of several of the checks was a street address in Honolulu and "#303" or "Apt. 303."

Customer referral expenditures

Petitioner's credit card statements for 2009 list 12 charges totaling $741 denoted as "Food/Beverage" purchases at "Oceanarium Restaurant Honolulu" (Oceanarium Restaurant).[3] These expenditures were for Oceanarium Restaurant gift certificates that petitioner gave to travel agents who referred potential timeshare customers to him. Petitioner was not present when the food and beverages purchased with these gift certificates were consumed.

Petitioner's credit card statements for 2009 also list six entries totaling $379.03 denoted as "Personal Services" purchases at Outrigger Catamaran Honolulu (Outrigger Catamaran).[4]

---

[3]On brief petitioner lists only 11 Oceanarium Restaurant charges totaling $631.72 for 2009. However, a review of petitioner's 2009 credit card statements reveals that petitioner's brief contains the following two errors: (1) an Oceanarium Restaurant charge of $82.34 is listed in the brief as $82.84, and (2) an Oceanarium Restaurant charge of $109.78 is incorrectly listed as an "Outrigger Catamaran" charge.

[4]On brief, petitioner contends that there are seven rather than six Outrigger

(continued...)

In 2010, petitioner gave cashier's checks totaling $2,400 to travel agents and other individuals when their referrals of potential timeshare buyers resulted in completed sales. Petitioner stapled a copy of each such cashier's check to a completed Wyndham "Sales Professional Follow-Up Form" (followup form) as a means of keeping track of his expenses associated with each completed sale on which he earned a commission. Each followup form included the name or names of the timeshare purchaser, a sale price, and a sale date and named petitioner as the sale representative.

Customer incentive expenditures

The record includes a handwritten statement prepared by petitioner reciting that he made cash payments to Hawaii Tour and Travel totaling $900 "for year 2010" for cruise tickets. The statement bears the stamp of Hawaii Tour and Travel with a handwritten signature and is dated August 19, 2011.

Also in 2010, petitioner took certain of his timeshare purchasers to dinner or gave them gift certificates redeemable at a Honolulu resort to foster "goodwill"

---

[4](...continued)
Catamaran charges totaling $487.93. However, a review of petitioner's 2009 credit card statements reveals that petitioner's brief contains two errors: (1) the incorrect listing of a $109.78 Oceanarium Restaurant charge as an Outrigger Catamaran charge, noted above; and (2) an Outrigger Catamaran charge of $41.88 is listed in petitioner's brief as $41.

intended to discourage them from canceling their purchase contracts (retention meals and retention gift certificates, respectively). Petitioner kept a record of these expenditures by stapling to the followup form associated with the purchaser the credit card receipt for the retention meal or the resort's invoice reflecting the purchase of the retention gift certificate. Eight followup forms had retention meal credit card receipts from 2010 totaling $665.02,[5] and seven had retention gift certificate invoices from 2010 from the Marriott Waikiki Resort & Spa totaling $450. An additional six followup forms had credit card receipts attached, totaling $275, that did not indicate the nature of the credit card expenditure.

Shipping costs

One of petitioner's credit card statements in 2009 had an entry for "Mail Boxes, Etc." in the amount of $72.25.

Continuing education expenses

The stipulated exhibits include petitioner's check made out in 2009 to "Management Specialists" for $99.48 and a credit card statement of petitioner's for 2009 with an entry for $20.66 for the vendor listed as "Get Motivated Semina Tampa" and the description "Business Services".

---

[5]On brief petitioner lists all eight charges, but his total for them--$625.02-- omits one such charge, a $40 charge at Saba Dee Thai restaurant. The correct figure, as respondent notes in his brief, is $665.02.

Telephone

The stipulated exhibits include copies of 17 checks petitioner made out to "Sprint" during 2009 and 2010. None of the Sprint checks bears an entry in the memo line, and no Sprint monthly statements are in the record.

Air travel

During 2009 petitioner took seven same-day roundtrip flights from Oahu to the island of Hawaii to fill in as a sales associate at another Wyndham timeshare sales office that was understaffed. Petitioner's credit card statements for 2009 list seven entries for $39.95 for the vendor "Mokulele Flight SE 5 Kailua Kona" and the description "Airport Terminal F".

Wyndham's reimbursement policy

Wyndham had a written reimbursement policy that set forth certain terms and conditions for reimbursement of expenses incurred by employees. The reimbursement policy stated that Wyndham employees had to use a corporate charge card for all travel and entertainment expenses. The policy was silent with respect to mailing and shipping costs incurred by employees.

Petitioner requested a corporate charge card from Wyndham, but it was refused to him with the explanation that charge cards were available only to company presidents and vice presidents.

Petitioner brought an employment discrimination lawsuit against Wyndham on December 28, 2010. In his complaint, as amended, he alleged that in January 2009 his Wyndham supervisors accused him of offering unauthorized incentives to prospective clients.

Charitable contributions

2009

In 2009, petitioner wrote checks totaling $1,640 to "Victory Outreach" and a check for $60 to "Trinity Broadcasting Network" (Trinity).

The founder of the "Waikiki Beach Outreach Ministry" (Waikiki Outreach) wrote letters in April and May of 2013 stating that petitioner made contributions to the organization in 2009 by cash and check that totaled $8,340.

2010

The founder of Waikiki Outreach wrote letters in April and May of 2013 stating that petitioner made contributions to the organization in 2010 by cash and check that totaled $14,450.

American Opportunity Tax Credit

Petitioner's daughter Vanessa Henao was enrolled full time at the University of Hawaii during 2009. She was allowed as petitioner's dependent for that year. The University of Hawaii issued Forms 1098-T, Tuition Statement, for

2009 and 2010 to Vanessa, reporting amounts billed during those years for tuition and related expenses of $1,861 and $2,858, respectively. Petitioner wrote four checks to Vanessa between January and April 2009 for $330, $320, $150, and $320. Written in the memo line of all but the $150 check is "school tuition".

Accuracy-related penalty

Petitioner's 2010 return names H&R Block as the paid preparer.

Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the burden of showing entitlement to a claimed deduction is on the taxpayer. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see also sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). However, the burden of proof shifts to the Commissioner as to any factual issue relevant to a taxpayer's liability for income tax where the taxpayer introduces credible evidence with respect to the issue and certain other criteria are met, including substantiation of items on the return. Sec. 7491(a). Credible evidence for this purpose "is the quality of evidence which, after critical

analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted". Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

While conceding that he has the burden to substantiate the deductions and the credit at issue, petitioner argues that the burden has shifted to respondent with respect to other issues, such as whether reported business expenses were ordinary and necessary. We disagree. As discussed more fully infra, we conclude that the burden of proof has not shifted to respondent under section 7491(a) with respect to any factual issues, either because petitioner has failed to substantiate an item or, in the case of certain alleged business purposes for expenditures, because petitioner has not introduced credible evidence of business purpose.

Where a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction to which he may be entitled, we may in certain circumstances estimate the amount allowable. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). For expenses subject to the more stringent substantiation requirements of section 274(d), however, the Cohan rule may not be used. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam,

412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In addition, the Cohan rule does not relieve taxpayers of substantiation requirements that Congress has specifically laid out under section 170 with respect to charitable contributions. Van Dusen v. Commissioner, 136 T.C. 515, 537 n. 39 (2011). And section 170(f)(17) provides that no charitable contribution deduction is allowed "for any contribution of a cash, check, or other monetary gift unless the donor maintains as a record of such contribution a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution."

Employee Business Expenses

Overview

Section 162 allows a taxpayer to deduct all "ordinary and necessary" expenses paid or incurred by the taxpayer in carrying on a trade or business, including expenses paid or incurred as an employee. Lucas v. Commissioner, 79 T.C. 1, 6 (1982). A deductible business expense under section 162 must be "directly connected with or pertaining to the taxpayer's trade or business". See Briggs v. Commissioner, 75 T.C. 465, 468-469 (1980), aff'd, 694 F.2d 614 (9th Cir. 1982); sec. 1.162-1(a), Income Tax Regs. A proximate relation between the

expense and the business is required. <u>Walliser v. Commissioner</u>, 72 T.C. 433, 437-438 (1979); <u>Lohrke v. Commissioner</u>, 48 T.C. 679, 689 (1967); <u>see also</u> <u>Noland v. Commissioner</u>, 269 F.2d 108, 113 (4th Cir. 1959) (requiring "proof of some certainty and directness"), <u>aff'g</u> T.C. Memo. 1958-60. The determination is essentially one of fact. <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943); <u>Walliser v. Commissioner</u>, 72 T.C. at 437. In general, no deduction is allowed for personal, living, or family expenses. Sec. 262(a).

A deduction under section 162 generally is not allowable to an employee to the extent that the employee is entitled to (but does not claim) reimbursement of the expense. <u>Lucas v. Commissioner</u>, 79 T.C. at 7; <u>Podems v. Commissioner</u>, 24 T.C. 21 (1955). Such an expense generally is not considered "necessary". <u>See</u> <u>Orvis v. Commissioner</u>, 788 F.2d 1406, 1408 (9th Cir. 1986), <u>aff'g</u> T.C. Memo. 1984-533; <u>Podems v. Commissioner</u>, 24 T.C. at 22-23. Expenditures that are not reimbursable by the employer but that enable an employee to better perform his duties to the employer and that have a direct bearing on the amount of his compensation or chances for advancement may be deductible under section 162. <u>See</u> <u>Walliser v. Commissioner</u>, 72 T.C. at 437; <u>see also</u> <u>Heineman v.</u> <u>Commissioner</u>, 82 T.C. 538, 545 (1984). The absence of a requirement or expectation on the part of the employer that the employee make the expenditure

and bear the cost does not itself bar the deduction of an employee business expense. See, e.g., O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); Heineman v. Commissioner, 82 T.C. at 545; Christensen v. Commissioner, 17 T.C. 1456, 1456-57 (1952); Jetty v. Commissioner, T.C. Memo. 1982-378; Reynolds v. Commissioner, T.C. Memo. 1980-422.

Respondent contends that all of petitioner's reported employee business expenses, except office rent, were reimbursable under Wyndham's reimbursement policy. The taxpayer bears the burden of proving that he is not entitled to reimbursement from the employer for any reported employee business expenses. See Fountain v. Commissioner, 59 T.C. 696, 708 (1973). We address the issue of reimbursability in the analysis that follows where its resolution is necessary to decide petitioner's entitlement to a specific expense item.

Office rent

Petitioner contends that $4,000 of the claimed employee business expense deduction for 2009 that respondent disallowed constitutes rent he paid for office space. Petitioner testified that the rent was paid for a "small room" he shared with another Wyndham sales associate that was used for making cold calls to prospective timeshare purchasers, away from the distractions of home. Petitioner testified that this rent was paid to a "friend".

As substantiation petitioner proffered five checks he wrote in 2009, all of which were for $800, made out to "Seven Island Corp.", dated at one-month intervals, and--in the case of several--containing in the memo line a street address in Honolulu and "#303" or "Apt. 303".

Respondent, noting the absence of any lease in the record, contends that petitioner's self-serving testimony and the foregoing checks are insufficient to substantiate the claimed rent expense.

We agree with respondent. The checks do not corroborate petitioner's testimony in important respects. If petitioner paid the rent to a "friend", why are the checks made out to a corporate entity? Petitioner has not explained. And if the lessor was a corporation, we find the absence of a copy of any lease implausible. Petitioner claims that he rented a small room, but the memo entries on several of the checks indicate they were for an apartment. If, as petitioner claims, he shared this rental property with another Wyndham sales associate, what portion of the rent was paid by the associate? Petitioner has not said. In sum, while the checks might establish that petitioner paid $4,000 to rent an apartment during 2009, they do not establish that the apartment was used for business as opposed to personal purposes. Because petitioner's testimony and his proffered documentation do not correspond, we conclude that petitioner has failed to offer

credible evidence within the meaning of section 7491(a)(1) concerning the business purpose of the rent he paid. He therefore retains the burden of proof on that issue and has failed to meet it. Petitioner has accordingly not shown entitlement to any deduction for office rent for 2009.

Customer referral expenditures

Petitioner contends that $1,120.03 of his claimed employee business expense deduction for 2009 that respondent disallowed was for the purchase of gift certificates that he gave to travel agents for their referrals of potential timeshare buyers. As substantiation petitioner proffers his credit card statements for 2009 that list 12 charges for "Food/Beverage" at Oceanarium Restaurant totaling $741 and six charges for "Personal Services" at Outrigger Catamaran totaling $379.03. Petitioner made the handwritten notation "gift cert." next to each of these entries at a time not disclosed in the record. Respondent argues that petitioner's uncorroborated, self-serving testimony does not establish that he paid referral fees to travel agents.

As for the Outrigger Catamaran entries, the obvious inference to be drawn is that petitioner purchased catamaran rides. Even if we give petitioner the benefit of the doubt--not drawing the conclusion that he himself took six catamaran rides during 2009 but instead purchased gift certificates for rides to be given to others--

we encounter tough sailing with the rest of the story. Why were Honolulu-based travel agents providing referrals to petitioner compensated with catamaran rides rather than cash? To get over that hump of implausibility, one has to speculate that perhaps the travel agents found the gift certificates useful because they could "re-gift" them to clients. But this is too much speculation. We conclude that petitioner has failed to introduce credible evidence within the meaning of section 7491(a)(1) concerning the business purpose for the Outrigger Catamaran expenditures. He therefore retains the burden of proof on that issue and has failed to meet it. Accordingly, petitioner has not shown entitlement to an employee business expense deduction for the Outrigger Catamaran expenditures.

As for the Oceanarium Restaurant entries, they are listed on the credit card statements as for food and beverage. Accepting petitioner's testimony that the entries represent the purchase of restaurant gift certificates that he gave to travel agents as referral fees,[6] we find that the gift certificates were redeemable for food and beverages.[7] For that reason, petitioner's attempt to deduct the expenditure

---

[6]We find it considerably more plausible that a travel agent in the circumstances described by petitioner would be compensated with a complimentary restaurant meal rather than a catamaran ride.

[7]Cf. Concord Instruments Corp. v. Commissioner, T.C. Memo. 1994-248 (treating season ticket expenditures as entertainment expenditures for purposes of
(continued...)

founders on section 274(k). Section 274(k)(1) provides that "no deduction shall be allowed under this chapter for the expense of any food or beverages unless * * * the taxpayer (or an employee of the taxpayer) is present at the furnishing of such food or beverages." "This chapter" is chapter 1 of subtitle A of the Internal Revenue Code, which encompasses both section 274 and the allowance of trade or business deductions under section 162. Since, according to petitioner, he treated helpful travel agents to restaurant meals by giving them gift certificates from a restaurant, the evidence all points to the conclusion that petitioner was not present for the meal. We find that he was not.[8] We accordingly conclude that section 274(k)(1) precludes petitioner's deduction of the Oceanarium Restaurant expenditures as employee business expenses.[9]

_____

[7](...continued)
section 274).

[8]Had petitioner been present for the meal, it is implausible that he would have used a gift certificate as opposed to merely picking up the check. Petitioner has made no contention to the contrary.

[9]While there are various exceptions to the sec. 274(k)(1) disallowance rule in sec. 274(k)(2), none is pertinent. We note in this regard that there is no evidence that petitioner treated the gift certificates as includible in the gross income of the recipients and filed information returns reporting the same. See sec. 274(e)(9); see also Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, par. 21.2.4, at s21-9-21-10 (Supp. 2015).

Petitioner also contends that $2,400 of his claimed employee business expense deduction for 2010 that respondent disallowed is deductible by him because he made payments in that aggregate amount to travel agents and other individuals when their referrals of potential timeshare buyers resulted in completed sales. He testified to this effect and the stipulated exhibits include five completed followup forms for 2010 containing the name of a timeshare purchaser, a sale price, and sale date and listing petitioner as the sales representative. Attached to each is a copy of a cashier's check with a date in 2010, an individual named as payee, and a value ranging from $300 to $800. The checks total $2,400. Respondent argues that petitioner's self-serving testimony does not establish that the cashier's checks were provided to travel agents as referral fees, or that such fees, if so paid, were ordinary and necessary business expenses.

We are satisfied that the documentary evidence sufficiently corroborates petitioner's testimony. The cashier's check copies are each stapled to a particular followup form that has been filled out in a manner indicating a completed timeshare sale. We are persuaded by the circumstantial evidence that petitioner affixed the cashier's check copies to the followup forms as a means of keeping track of the expenditures he made to facilitate a given timeshare sale. The business purpose of providing a cash "referral fee" to a travel agent who referred a

prospective customer to petitioner that culminated in a completed timeshare sale is obvious.

The question remains, however, whether petitioner was eligible to be reimbursed by Wyndham for these referral fees, as respondent also contends. Petitioner testified that Wyndham was unwilling to reimburse him for these referral fees. On December 28, 2010, petitioner brought an employment discrimination lawsuit against Wyndham. In his complaint, as amended, he alleged that in January 2009 his Wyndham supervisors accused him of offering unauthorized incentives to prospective clients. On this record and in view of the relaxed standards for evidence in a small tax case, see sec. 7463(a); Rule 174(b), we are satisfied from the lawsuit allegation that in 2010 Wyndham had become distrustful of petitioner's use of incentives to facilitate timeshare sales. We are satisfied on this record that petitioner was not, and could not have been, reimbursed for these referral fees. Accordingly, we hold that petitioner is entitled to deduct $2,400 as an ordinary and necessary employee business expense for 2010.

Customer incentive expenditures

Petitioner contends that $900 of his claimed employee business expense deduction for 2010 that respondent disallowed constitutes his payment for dinner

cruise tickets to entice prospective timeshare buyers to attend Wyndham sales presentations and is therefore deductible. Petitioner testified that he purchased the tickets with cash. To substantiate the cash payment, petitioner proffered a handwritten statement he prepared, dated August 19, 2011, reciting that he paid cash to "Hawaii Tour and Travel" totaling $900 "for year 2010" for cruise tickets. The statement bears the stamp of "Hawaii Tour and Travel" and the signature of an individual petitioner testified represented the foregoing firm.

The dinner cruise tickets constitute entertainment expenses for purposes of section 274. See sec. 1.274-2(b)(1), Income Tax Regs. A deduction for the expenditure is therefore subject to the strict substantiation requirements of section 274(d). See sec. 274(d)(2). One element of an entertainment expenditure that must be substantiated under section 274 is the date. See sec. 1.274-5T(b)(3)(ii), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985). The substantiation petitioner has offered at most establishes that he purchased several dinner cruise tickets in 2010. It does not establish either the dates the tickets were purchased or the dates the cruises were taken. See Smith v. Commissioner, 80 T.C. 1165, 1171-1172 (1983) (applying section 274(d)(1)) ("Each of the * * * elements must be proved for each separate expenditure."); Wakefield v. Commissioner, T.C. Memo. 2015-4 (stating that section 1.274-5T(b)(3),

Temporary Income Tax Regs., supra, requires, for each expense, the date of the entertainment or meal, its location, its specific business purpose, the attendees, and the attendees' business relationship to the taxpayer).[10]

Petitioner also contends that $1,390.02 of his claimed employee business expense deduction for 2010 that respondent disallowed constitutes expenditures for meals (retention meals) and gift certificates (retention gift certificates) that he provided to timeshare purchasers as a "goodwill" gesture to encourage them not to exercise their cancellation rights. As substantiation petitioner offered additional completed followup forms for 2010, each including the name of a timeshare purchaser, a sale price, and a sale date and naming petitioner as sales representative. Attached to the forms were credit card receipts or invoices, as described infra.

With respect to the retention meals, eight of the followup forms have stapled to them a credit card receipt of petitioner's for a restaurant meal that together total $665.02. Providing food and beverages to customers is "entertainment" for purposes of section 274 and therefore is subject to that

---

[10]There is no evidence that petitioner made the cruise tickets available to the general public or a cross-section thereof, as opposed to persons he selected. See 274(e)(7); Churchill Downs, Inc. v. Commissioner, 115 T.C. 279 (2000), aff'd, 307 F.3d 423 (6th Cir. 2002); sec. 1.274-2(f)(2)(viii), Income Tax Regs.

section's more stringent substantiation requirements.  See Sanford v. Commissioner, 50 T.C. at 827; Jones v. Commissioner, T.C. Memo. 2013-132; sec. 1.274-2(b)(1)(i), Income Tax Regs.  In general, a taxpayer must show that such an entertainment expenditure is either "directly related to" or "associated with" the active conduct of the taxpayer's trade or business, sec. 274(a)(1); he must substantiate the amount, time and place, business purpose, and his business relationship to the persons entertained, sec. 274(d); and, in the case of a meal, he must have been present for its consumption, sec. 274(k).

Petitioner testified that he bought dinner for certain of his timeshare purchasers so that they would not change their minds and cancel their purchases. We are satisfied that the credit card receipts, stapled as each was to a specific followup form, corroborate petitioner's testimony as to the business purpose for and relationship to specific timeshare purchasers entertained at meals and substantiate the amount, time, and place of the meals.  A taxpayer may satisfy the "associated with" requirement of section 274(a)(1) by showing that an entertainment expenditure was incurred "to encourage the continuation of an existing business relationship."  Sec. 1.274-2(d)(2), Income Tax Regs.  We are satisfied that is what occurred here.  Generally, the entertainment must directly precede or follow a bona fide business transaction.  Where the entertainment does

not occur on the same day as the transaction, the regulations further provide that satisfaction of this temporal aspect requires a consideration of all the facts and circumstances. Id. subpara. (3)(ii). Under that standard, we are satisfied that petitioner's providing his customers with meals so that they would not exercise their cancellation rights is close enough in time to the purchase of the timeshare as to constitute "associated with" entertainment under the regulations. That petitioner's credit cards were used for the meal purchases establishes to our satisfaction that he was present at the meals. Thus, we conclude that petitioner has shown that the meals were "associated with" the active conduct of his business in that they facilitated the consummation of a timeshare sale, thereby securing petitioner's commission. We also find that petitioner was not and could not have been reimbursed by Wyndham for these meal expenditures, for the same reasons we reached that conclusion with respect to the referral fees. Consequently, we hold that petitioner has shown entitlement to deduct $665.02 in employee business expenses for 2010 disallowed by respondent, subject to the 50% limitation of section 274(n), which petitioner acknowledges.

With respect to the retention gift certificates, attached to seven of the followup forms are invoices from the Marriott Waikiki Resort & Spa for purchases of gift certificates totaling $450. (Five of the invoices indicate purchases by credit

cards corresponding to the credit cards petitioner used for the meals discussed above, and two are for cash.) Given that the gift certificates were redeemable at a resort property, presumably for resort activities or lodging, we find that providing them constituted providing "entertainment" within the meaning of section 274. See sec. 274(a)(1); sec 1.274-2(b)(1)(i), Income Tax Regs. Consequently, petitioner must establish that the expenditures were either "directly related to" or "associated with" the active conduct of his business, sec. 274(a)(1), and he must substantiate the amount, time, place, and business purpose of the entertainment and his business relationship to the persons entertained, sec. 274(d).

Petitioner argues that the gift certificates served the same purpose as the meals: to encourage timeshare purchasers not to exercise their cancellation rights. As with the credit card receipts for meals, we are satisfied that the stapling of a gift certificate invoice to a specific followup form corroborates petitioner's testimony as to the business purpose for and relationship to specific timeshare purchasers whom petitioner entertained by means of gift certificates at the resort. The gift certificate invoices substantiate the dollar amount and place of the entertainment and, given that the timeshare purchasers were vacationing in Hawaii, we are satisfied that the gift certificates were redeemed within a short time after their purchase, which would adequately substantiate the date and time of the

entertainment. For essentially the same reasons as for the meals, we are persuaded that the entertainment petitioner provided by means of the resort gift certificates was "associated with" the active conduct of his trade or business. We also find that petitioner was not and could not have been reimbursed by Wyndham for these gift certificate expenditures, for the same reasons we reached that conclusion with respect to the referral fees. Consequently, we hold that petitioner has shown entitlement to deduct $450 in employee business expenses for 2010 disallowed by respondent, subject to the 50% limitation of section 274(n).

We find the substantiation inadequate for the remaining $275 petitioner deducted for retention gift certificates. Although there are another six followup forms in the stipulated exhibits with credit card receipts stapled to them that together total $275, nothing anywhere on any document or attachment indicates that the expenditure was for the purchase of a gift certificate.

Shipping costs

Petitioner contends that $72.25 of his claimed employee business expense deduction for 2009 that respondent disallowed constitutes shipping costs that he is entitled to deduct. Petitioner testified that he often mailed 8- to 10-pound paperwork kits to timeshare purchasers after they returned home from Hawaii, as the purchasers were reluctant to carry the materials in their luggage. Petitioner's

credit card statements for 2009 include a July 10, 2009, entry for the amount noted above at "Mail Boxes, Etc."  Petitioner made the handwritten notation "mail shipments" next to the entry at a time not established in the record.

We conclude that petitioner has shown entitlement to a $72.25 deduction for shipping costs as an employee business expense for 2009.  We are persuaded that petitioner made the expenditure for the convenience of his timeshare purchasers and thereby secured his commissions.  Given the silence of the Wyndham reimbursement policy regarding shipping costs incurred by employees, we are satisfied that petitioner was not eligible for reimbursement.

Continuing education expenses

Petitioner contends that $120.14 of his claimed employee business expense deduction for 2009 that respondent disallowed is "continuing education" expenses that he is entitled to deduct.  On brief petitioner points to a copy of a check he made out to "Management Specialists" and a 2009 credit card statement entry for "Get Motivated" that, when totaled, equal the previous figure.  Petitioner made handwritten notations next to the check copy and the credit card statement, at a time not disclosed in the record, indicating that the foregoing were for education.  Petitioner argues on brief that these expenditures were for education necessary for the renewal of his real estate and business licenses, but there is no competent

testimony to that effect. Because petitioner has not introduced credible evidence within the meaning of section 7491(a)(1) sufficient to support a finding in his favor, he retains the burden of proof regarding the business purpose of these expenditures and has failed to meet it. He has therefore failed to show entitlement to deduct any continuing education expenses for 2009.

Telephone

Petitioner claims that $121 of his claimed employee business expense deduction for 2009 that respondent disallowed constitutes his expenditures for cellular telephone use in connection with his employment with Wyndham. Petitioner testified that he kept two cell phones with Sprint service, one for personal matters and one for business. The stipulated exhibits include copies of 17 checks petitioner made out to Sprint during 2009 and 2010. Petitioner testified that checks attributable to the business phone could be distinguished from checks attributable to the personal phone because the monthly charges were approximately $50-$60 for the former and $100 for the latter. Petitioner testified that two of the Sprint checks written in 2009, for $56 and $65, were for the business phone. (The remaining checks generally ranged from $107.58 to $232.82.) None of the Sprint checks bears an entry in the memo line. No Sprint monthly statements are in the record.

For 2009 cellular phones were "listed property" subject to the strict substantiation requirements of section 274(d). Secs. 274(d)(4), 280F(d)(4); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 1985). By those standards, petitioner's substantiation of business cell phone use is inadequate. We therefore hold that petitioner has not shown entitlement to any employee business expense deduction for 2009 for a cellular phone.

Air travel

Petitioner contends that $279.65 of his claimed employee business expense deduction for 2009 that respondent disallowed constitutes airfare that he is entitled to deduct. Petitioner testified that he paid for flights from Oahu to the Big Island to cover for employees at one of Wyndham's timeshare sales offices there. Respondent argues that petitioner has not satisfied the substantiation requirements applicable to travel expenses under section 274(d).

Petitioner concedes these are traveling expenses required to be substantiated under section 274(d) but argues that he has adequately done so.[11] In the case of a traveling expense, the taxpayer must substantiate the amount of each separate

---

[11]Because we conclude on the basis of a preponderance of the evidence that petitioner's trips to the Big Island did not involve staying overnight, there is some doubt whether the expenditures are properly characterized as a "traveling expense" within the meaning of sec. 274(d)(1) as opposed to a transportation expense.

expenditure, departure and return dates, destination, and business purpose. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). The stipulated exhibits include petitioner's credit card statements for 2009, and those statements contain seven entries for $39.95 with the vendor listed as "Mokulele Flight SE 5 Kailua Kona" and the description "Airport Terminal F".

For the reasons discussed below, we are satisfied that petitioner has adequately substantiated his reported traveling expense under section 274(d). We take judicial notice of the fact that Kailua Kona is on the Big Island (the island of Hawaii). The credit card entries persuade us that each represents petitioner's purchase of roundtrip airfare between Oahu and the Big Island on the dates specified (on a walkup, at-the-terminal basis, given the description line), thus satisfying all elements of the regulation except business purpose. Petitioner's testimony persuades us of the business purpose: to fill in as a sales associate at another Wyndham timeshare sales office that was understaffed. Because petitioner was compensated on a commission basis, we find it plausible that he would take advantage of the opportunity to mine other prospects at a different Wyndham location when presented, even to the point of getting himself there at his own expense, given the modest cost per trip.

We find that petitioner was not, and could not have been, reimbursed by Wyndham for the cost of these flights. The Wyndham reimbursement policy required that Wyndham employees use a corporate charge card for all travel expenses. Petitioner's request for such a card was denied.

We therefore hold that petitioner has shown entitlement to an employee business expense deduction of $279.65 for air travel for 2009.

Conclusion

In the notice of deficiency, respondent allowed deductions of $1,560 for 2009 and 2010 for unreimbursed employee business expenses. To demonstrate error in these determinations, petitioner must demonstrate that he is entitled to deductions in excess of the amount allowed. See Schafler v. Commissioner, T.C. Memo. 1998-86. For 2009 we have found herein that petitioner has demonstrated entitlement to a deduction of $351.90 for unreimbursed employee business expenses--far less than the $1,560 respondent allowed. For 2010 we have found herein that petitioner has demonstrated entitlement to deductions totaling $2,957.51 for unreimbursed employee business expenses, consisting of $2,400 in referral payments, plus meals and entertainment expenses of $665.02 and $450 the deductibility of which is limited to 50% of the expenditure. Consequently, we hold that petitioner is not entitled to any additional employee business expense

deduction for 2009 beyond those allowed by respondent, and that he is entitled to an additional deduction of such expenses for 2010 of $1,397.51.

Charitable contributions

Petitioner claimed charitable contribution deductions of $8,747 and $18,000 on his 2009 and 2010 returns, respectively. In the notice of deficiency, respondent determined that petitioner had substantiated only $3,100 of such deductions for each year, and disallowed the remaining $5,647 and $14,900 reported contributions for the 2009 and 2010 years, respectively. Respondent has since conceded that petitioner is entitled to additional charitable contribution deductions for 2010 of $2,000, for a total of $5,100 in charitable contribution deductions allowed for that year.

Section 170(a) allows a deduction for a charitable contribution made within the taxable year, but only if "verified under regulations prescribed by the Secretary." With respect to monetary gifts, section 170(f)(17) further provides that "[n]o deduction shall be allowed under * * * [section 170(a)] for any contribution of a cash, check, or other monetary gift unless the donor maintains as a record of such contribution a bank record or a written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution." Section 170(f)(17) was added to the Code by

the Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 1217(a), 120 Stat. at 1080.  It is effective for taxable years beginning after August 17, 2006.  See id. subsec. (b) (date of enactment is effective date).  Before the enactment of section 170(f)(17), the applicable recordkeeping requirements for substantiating a monetary charitable contribution were set out in section 1.170A-13(a), Income Tax Regs.

2009

Petitioner contends he is entitled to deduct $13,140 in charitable contributions for 2009 consisting of:  (1) $8,340 in contributions by cash or check to Waikiki Outreach; (2) $1,640 in contributions by check to Victory Outreach; (3) a $60 contribution by check to Trinity; and (4) the $3,100 allowed in the notice of deficiency.  Respondent contends that the Waikiki Outreach contributions have not been substantiated and that while there are checks to substantiate the Victory Outreach and Trinity contributions, the total of those is less than the $3,100 allowed for charitable contribution deductions in the notice of deficiency.  Thus, respondent contends, petitioner has not shown entitlement to any deduction greater than what has been allowed.

Petitioner offers as substantiation for the 2009 Waikiki Outreach contributions letters written more than three years later, in April and May of 2013,

by Waikiki Outreach's founder, who also testified at trial. The April letter states that petitioner made "contributions totaling $8,340 (over $600 to $700 cash per month in cash and checks) in 2009" while the May letter states: "Our records and information reflect monthly contributions [by petitioner] of $400 per month in checks and an average of about $600 per month in cash from early 2009 to 2011. Your contributions totaled $8,340 in 2009".

These letters do not satisfy the substantiation requirements of section 170(f)(17). They do not establish the amounts of the contributions. Even putting aside the obvious problem that the letters contradict each other as to the monthly amounts given ($600 to $700 per month according to one; $1,000 per month according to the other), it is clear from the face of the letters that they are mere estimates. One says "$600 to $700" per month; the other says, with respect to cash, "an average of about $600 per month" but only from "early" 2009. The letters also do not establish the date of any contribution.[12]

Petitioner argues, albeit in reference to the requirements of section 1.170A-13(a)(1), Income Tax Regs., that he has substantially complied with the

---

[12]Petitioner suggests on brief that Waikiki Outreach maintained records of the contributions that are more detailed than the letters. In our view, the testimony of the letters' author casts some doubt on that proposition, but in any event sec. 170(f)(17) provides that the required information must be in the written communication from the donee that is maintained by the taxpayer in his records.

substantiation requirements, citing Van Dusen v. Commissioner, 136 T.C. 515,

and Bond v. Commissioner, 100 T.C. 32 (1993), cases where this Court held that

taxpayers were entitled to charitable contribution deductions notwithstanding their

failure to comply strictly with certain regulatory requirements set forth in section

1.170A-13, Income Tax Regs. This Court's application of the substantial

compliance doctrine has been summarized as turning upon whether the

requirements "relate to the substance or essence of the statute"--in which case

strict adherence is required--or whether instead the requirements "are procedural

or directory in that they are not of the essence of the thing to be done but are given

with a view to the orderly conduct of business"--in which case they may be

fulfilled by substantial, if not strict, compliance. Taylor v. Commissioner, 67 T.C.

1071, 1077-1078 (1977).

The requirements at issue here--namely, that the written communication

from the donee show the date and amount of a contribution--have been put into the

statute by Congress in enacting section 170(f)(17). The legislative history of

section 170(f)(17) states:

> The provision * * * provid[es] that in the case of a charitable
> contribution of money * * * applicable record keeping requirements
> are satisfied only if the donor maintains as a record of the
> contribution a bank record or a written communication from the
> donee showing the name of the donee organization, the date of the

contribution, and the amount of the contribution.  The recordkeeping requirements may not be satisfied by maintaining other written records. * * * The provision is intended to provide greater certainty, both to taxpayers and to the Secretary, in determining what may be deducted as a charitable contribution.

Staff of J. Comm. on Taxation, Technical Explanation of H.R. 4, the "Pension Protection Act of 2006," as Passed by the House on July 28, 2006, and as Considered by the Senate on August 3, 2006, at 305-306 (J. Comm. Print 2006) (emphasis added).  We conclude that the recordkeeping requirements of section 170(f)(17) are its essence.  Consequently, they may not be satisfied by substantial compliance.  We reached a similar conclusion with respect to the statutory requirements for charitable contributions of $250 or more set forth in section 170(f)(8).  See Durden v. Commissioner, T.C. Memo. 2012-140.  Because the letters do not strictly comply with section 170(f)(17), petitioner has failed to substantiate any charitable contribution to Waikiki Outreach for 2009.

Even if a deduction for the claimed contributions to Waikiki Outreach were not precluded by section 170(f)(17), we would still conclude that petitioner had failed to substantiate the contributions because the letters are unreliable.  The letters were written more than three years after petitioner purportedly made the

2009 contributions.[13]  Waikiki Outreach's founder, who wrote the letters, also testified; his testimony made clear that he was estimating from memory in writing the letters.  We have noted that the letters contradict each other as to the monthly amounts given.  Both letters also state that petitioner made contributions by check most months during 2009.  Although the stipulated exhibits contain an extensive number of petitioner's canceled checks for 2009, none are written to Waikiki Outreach.  In short, the letters are simply not reliable evidence of the amount of petitioner's contributions to Waikiki Outreach in 2009.

There remains petitioner's claim of deductions for charitable contributions of $1,640 to Victory Outreach and $60 to Trinity, for a total of $1,700.  Respondent contends that even if these contributions were treated as

---

[13]Because the letters do not establish the dates or amounts of the contributions as required by sec. 170(f)(17), we find it unnecessary to decide whether petitioner's procurement of the letters in 2013 would satisfy the sec. 170(f)(17) requirement that the donor "maintain[] as a record of such contribution" a bank record or written communication from the donee showing the required information.  We note in this regard that proposed regulations implementing sec. 170(f)(17) set as a deadline for the donor's receipt of the records the earlier of:  (1) the date the donor files the original return for the taxable year in which the contribution was made; or (2) the due date (including extensions) for filing the donor's original return for that year.  See sec. 1.170A-15(c), Proposed Income Tax Regs., 73 Fed. Reg. 45914 (Aug. 7, 2008).

substantiated,[14] they total less than the $3,100 charitable contribution deduction allowed in the notice of deficiency for 2009 and are therefore encompassed in that allowance.

Petitioner argues that these deductions should not be treated as included in the allowed amount because, in the case of the charitable contribution deduction allowed for 2010, the examining agent made an "X" on the canceled checks that were included in reaching the $3,100 figure allowed for that year, while there is no "X" on the checks substantiating the Victory Outreach and Trinity contributions for 2009. Petitioner testified that it was his understanding that the absence of the "X" on the Victory Outreach and Trinity checks indicates that they were not included in the $3,100 allowance for 2009 and contends that we should draw that inference.

We decline to do so. Respondent offers the more plausible explanation for the absence of "Xs" on the Victory Outreach and Trinity checks--indeed for the absence of an "X" on any of petitioner's 2009 checks in the record. Respondent would have us draw the inference that, because the amount allowed for 2009 is identical to that for 2010, and the 2010 figure can be matched with 2010 checks

---

[14]Respondent concedes that there are checks petitioner wrote to these organizations in these total amounts in the stipulated exhibits but contends that petitioner has not shown that either donee is a charitable organization.

marked with an "X",[15] the examining agent: (1) analyzed the 2010 substantiation check by check; (2) found checks payable to charitable organizations totaling $3,100 for 2010 on that basis; and (3) simply allowed the same amount to petitioner for 2009. We accept respondent's theory because it better accounts for the evidence in the record. It accounts for the identical allowance in both years-- an otherwise very unlikely coincidence had both years' figures been based on an actual tally of petitioner's checks. It also would explain why no 2009 check in the record has an "X" on it--a circumstance that petitioner's requested inference leaves unexplained.

More fundamentally, petitioner has the burden of showing error in the determination in the notice of deficiency that the charitable contribution deduction to which he is entitled for 2009 is $3,100. See Rule 142(a)(1); Welch v. Helvering, 290 U.S. at 115. To do so, he must provide evidence substantiating charitable contributions in excess of that amount. See Schafler v. Commissioner, T.C. Memo. 1998-86. He has not done so. We accordingly hold that petitioner

---

[15]In fact, there are two 2010 checks made payable to apparent charitable organizations that do not have an "X" yet must be counted to reach the $3,100 figure for 2010. Neither party has addressed this point, but on balance we find the evidence supports respondent's theory as described above.

has not shown entitlement to any charitable contribution deduction for 2009 in excess of that allowed in the notice of deficiency.

2010

Petitioner contends he is entitled to an additional $11,850 in charitable contribution deductions for 2010 beyond the $5,100 respondent has allowed,[16] attributable to contributions made to Waikiki Outreach. Petitioner contends that he made contributions by cash or check to Waikiki Outreach during 2010 totaling $14,450 and that respondent allowed only $2,600 of this amount. (The parties have stipulated that the $5,100 in charitable contribution deductions respondent allowed for 2010 includes $2,600 in Waikiki Outreach contributions petitioner made by check.)

To substantiate the additional $11,850 in Waikiki Outreach contributions for 2010, petitioner again offers letters written in 2013 by the organization's founder: one letter from May 2013 (previously discussed) and a letter from April of that year. The April 2013 letter states in pertinent part: "Your contributions totaling $14,450 (over $1000 [sic] cash per month in cash and checks) in 2010,

---

[16]We note that in contending for an additional $11,850 beyond the $5,100 allowed, petitioner has conceded that the $18,000 charitable contribution deduction claimed on his 2010 return was overstated by $1,050, as $11,850 plus $5,100 equals only $16,950.

have helped many people you have not known. Thank you for your regular cash contributions". The May 2013 letter states in pertinent part: "Our records and information reflect monthly contributions [by petitioner] of $400 per month in checks and an average of about $600 per month in cash from early 2009 to 2011. Your contributions totaled * * * $14,450 in 2010".

As with the 2009 contributions, these letters do not satisfy the substantiation requirements of section 170(f)(17). They do not establish the amounts of the contributions. The April 2013 letter states that petitioner contributed over $1,000 per month, for a total of $14,450--without explaining by how much petitioner's contributions exceeded $1,000 in each month so as to reach an annual total of $14,450. The May 2013 letter states the check amounts precisely ("$400 per month") and the cash amounts less precisely as "an average of about $600 per month". Our review of the letters persuades us that they provide, at best, estimates of the amounts. The letters also do not establish the date of any contribution. Section 170(f)(17) requires more, and for the reasons previously discussed, we conclude that strict, not substantial, compliance with the statute is required.

We also conclude, without regard to the strict requirements of section 170(f)(17), that the letters are unreliable evidence of contributions in the amounts reported by petitioner. The letters were written more than two years after

petitioner purportedly made the 2010 contributions and reflected, at best, estimates. The stipulated exhibits contain numerous checks petitioner made out to Waikiki Outreach during 2010, but their amounts fall considerably short of $400 per month.

American Opportunity Tax Credit

Although he did not raise it as an issue in the petition, at trial petitioner claimed entitlement to an American Opportunity Tax Credit (AO credit) for 2009. Respondent consented to having the issue tried. Petitioner contends that he is entitled to an AO credit for expenditures of $1,861 for tuition and $500 for books that he made in connection with his daughter Vanesssa's attendance at the University of Hawaii during 2009.

In general, section 25A(a) and (i) allows a tax credit equal to 100% of the first $2,000, and 25% of the next $2,000, of qualified tuition and related expenses paid during the taxable year for education furnished to a student, enrolled at least half time at an eligible educational institution, who is the taxpayer or the taxpayer's spouse or dependent.[17] The education must be furnished during an academic period beginning in the taxable year. See sec. 25A(i)(1). Vanessa was

---

[17]The credit is phased out when the taxpayer's adjusted gross income exceeds $80,000. Sec. 25A(i)(4). For 2009 petitioner reported adjusted gross income of $59,772 and concedes that he failed to report an additional $4,897.

allowed as petitioner's dependent for 2009. When a person who is allowed as a dependent for another taxpayer pays qualified tuition and related expenses, that person is not allowed the credit and instead the payment is treated as having been made by the taxpayer. Sec. 25A(g)(3).

Respondent does not dispute that Vanessa was enrolled at least half time at an eligible institution during 2009. Instead, respondent disputes that either petitioner or Vanessa made tuition payments to the University of Hawaii of $1,861 or that petitioner paid $800 for books for Vanessa's use in her course of study.

The stipulated exhibits include four checks petitioner wrote to Vanessa between January and April 2009 for $330, $320, $150, and $320. Written in the memo line of all but the $150 check is "school tuition". Petitioner testified that Vanessa used the funds to pay her University of Hawaii tuition. The stipulated exhibits also include Forms 1098-T issued by the University of Hawaii to Vanessa for 2009 and 2010 reporting amounts billed to her for qualified tuition and related expenses of $1,861 and $2,858, respectively.

The Forms 1098-T corroborate petitioner's claim that Vanessa used the four checks noted above (totaling $1,120) to fund payments of her tuition at the University of Hawaii. Although the Forms 1098-T in the record report amounts billed rather than paid, we infer from the fact that Vanessa was also billed

substantial amounts for University of Hawaii tuition during 2010 (according to the 2010 Form 1098-T in the record) that she must have remained reasonably current with respect to the tuition reported as billed to her on the 2009 Form 1098-T. Nonetheless, because petitioner has produced checks reflecting tuition payments in 2009 of only $1,210, we find that he has proved the payment of qualified tuition in that year only to the extent of $1,210.[18]  As for petitioner's claim that he spent an additional $800 on books used by Vanessa to pursue her course of study, we find, given the absence of any documentary evidence of that expenditure, that petitioner has not established that he or Vanessa paid any qualified related expenses for 2009.  Consequently, we hold that petitioner is entitled to an AO credit of $1,210 for 2009.

Accuracy-related penalty

Respondent determined an accuracy-related penalty under section 6662(a) for 2010.  Respondent argues that petitioner is liable for the penalty because his

---

[18]We note that the 2010 Form 1098-T reports that a $231 adjustment was made for a prior year.  In the absence of any other evidence, we find that the $1,861 reported as billed on the 2009 Form 1098-T must be adjusted downward by $231 to $1,630.  Since, as discussed supra, petitioner has substantiated tuition payments totaling only $1,210, we conclude that this adjustment does not affect his entitlement to an AO credit equal to the substantiated tuition payments.

underpayment is attributable to negligence or, in the alternative, a substantial understatement of income tax. Petitioner disputes his liability for the penalty.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of an underpayment of tax that is attributable to negligence or disregard of rules or regulations, or to a substantial understatement of income tax. An "underpayment of tax" for this purpose is defined as the excess of the amount of income tax imposed over the sum of the amount of tax shown as the tax by the taxpayer on his return and any tax previously assessed (or collected without assessment), less any rebate. Sec. 6664(a). An "understatement" is the excess of the amount of tax required to be shown on a return over the amount of tax shown on the return less any rebate. Sec. 6662(d)(2)(A). An understatement is "substantial" when it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

For purposes of the accuracy-related penalty, "negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). Negligence includes any failure to exercise ordinary and reasonable care in the preparation of a tax return or any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

No penalty is imposed under section 6662 with respect to any portion of an underpayment if there was reasonable cause for, and the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id. An honest misunderstanding of fact or law that is reasonable in the light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer, may indicate reasonable cause and good faith. Id. Finally, reliance on professional advice may, but does not necessarily, constitute reasonable cause if, under the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id.

Pursuant to section 7491(c), the Commissioner has the burden of production with respect to penalties and must offer sufficient evidence to indicate that imposing a penalty is appropriate. Higbee v. Commissioner, 116 T.C. at 446. If the Commissioner meets this burden of production, the burden shifts to the taxpayer to show that the penalty is incorrect, including establishing any exculpatory factors, such as reasonable cause. Id. at 446-447.

Negligence

Petitioner conceded on brief that he failed to report $1,848 in taxable Social Security benefits for 2010. He has not otherwise addressed this item. On this record, we find that the failure to report this income satisfies respondent's burden of production and constitutes a failure to exercise ordinary and reasonable care in the preparation of a tax return, unless petitioner establishes reasonable cause.

Petitioner claimed a deduction of $35,484 in 2010 for unreimbursed employee business expenses. After examining petitioner's return and substantiation, respondent determined that only $1,560 was allowable. At trial, petitioner sought to establish his entitlement to only $4,690.02 of the disallowed amount. For the remaining $30,793.98, he did not offer any substantiation, testimony, or argument.[19] The underpayment attributable to this portion of the disallowed employee business expenses is therefore attributable to negligence, see

---

[19]In this regard, given the absence of any documentation or any sworn testimony directed at this portion of the deduction, we accord no weight to petitioner's argument in his brief to the effect that all claimed expenses were in fact paid, were appropriate, and were supported by contemporaneous documentation at the time the return was filed.

sec. 1.6662-3(b)(1), Income Tax Regs., unless petitioner demonstrates that he had reasonable cause for it.[20]

With respect to the $4,690.02 for which petitioner attempted to show entitlement to an employee business expense deduction, we have found that he demonstrated entitlement to deduct $2,957.51.[21]  The $1,732.51 for which petitioner unsuccessfully contended included $900 in customer incentive expenditures for dinner cruise tickets and, with respect to the retention gift certificates, a $275 portion that we rejected outright (because the credit card documentation did not establish gift certificate purchases) plus a 50% reduction, due to the expenditure's character as entertainment, in the $450 portion we accepted as substantiated.  We find that petitioner acted with reasonable cause and in good faith with respect to these claimed deductions.  The dinner cruise tickets and retention gift certificates were supported by documentation that, although insufficient as substantiation under section 274(d), had been obtained before petitioner filed his return.  Petitioner's failure to treat the retention gift certificates as "entertainment" subject to the 50% limitation in section 274(n) was reasonable

---

[20]Given the magnitude of this portion of the deduction and the absence of substantiation, respondent has satisfied his burden of production.

[21]Because respondent allowed $1,560 of employee business expense deductions, petitioner is entitled to an additional deduction of $1,397.51.

in view of petitioner's experience, knowledge, and education  See sec. 1.6664-4(b)(1), Income Tax Regs.  Accordingly, we hold that petitioner had reasonable cause with respect to the underpayment attributable to the foregoing items, which total $1,400.

Petitioner claimed a charitable contribution deduction of $18,000 for 2010. After examining petitioner's substantiation, respondent determined that the allowable deduction was $3,100.  Subsequently, respondent conceded that petitioner was entitled to an additional $2,000 deduction, for a total of $5,100.

The remaining $12,900 consists of claimed charitable contributions of $1,050 for which petitioner offered no substantiation, testimony, or argument[22] and $11,850 that petitioner contends he made to Waikiki Outreach in cash or by checks for which he did not produce copies.[23]

The underpayment attributable to the $1,050 portion of the charitable contribution deduction for which petitioner offered no substantiation, testimony, or argument is attributable to negligence, see sec. 1.6662-3(b)(1), Income Tax

---

[22]See supra note 16.

[23]Petitioner concedes on brief that all checks made out to Waikiki Outreach that he produced were included in the $5,100 that respondent allowed as a charitable contribution deduction for 2010.

Regs., unless petitioner demonstrates that he had reasonable cause with respect to it.[24]

As for the remaining $11,850 that petitioner contends represents cash or check contributions to Waikiki Outreach, the only written substantiation petitioner offered with respect to this portion was letters written by an official with the donee organization approximately 18 months after petitioner filed his 2010 return.[25] Thus, on this record we find that petitioner claimed $11,850 in charitable contribution deductions without any written substantiation when he filed his return. This position violated section 170(f)(17) as well as the published instructions for claiming such deductions.[26] The failure to maintain the necessary records constitutes negligence,[27] see sec. 1.6662-3(b)(1), Income Tax Regs., unless

---

[24]Given that this portion of the deduction was claimed on the return without substantiation, it follows that respondent has satisfied his burden of production.

[25]The copy of petitioner's 2010 return in the record is unsigned and undated. However, since the paid preparer information is dated September 29, 2011, and no late filing penalty was determined, we find that petitioner's return was filed under an extension in the first half of October 2011.

[26]"**Recordkeeping.** For any contribution made in cash, regardless of the amount, you must maintain as a record of the contribution a bank record (such as a canceled check or credit card statement) or a written record from the charity." Dept. of the Treasury, Internal Revenue Service, "2010 Instructions for Schedule A (Form 1040)", at A-9 (emphasis added).

[27]This failure to maintain records also satisfies respondent's burden of

(continued...)

petitioner establishes that he had reasonable cause with respect to this portion of the underpayment.

Reliance on professional advice

Petitioner contends that he had reasonable cause because he reasonably relied on the advice of H&R Block, a professional tax preparation company, in connection with his 2010 reporting position. The 2010 return lists H&R Block as the paid preparer. Petitioner testified that he provided "canceled checks" and "receipts" to H&R Block and relied on that firm for the return positions.

A taxpayer seeking to establish reasonable cause for purposes of relief from a section 6662 penalty on the basis of reliance on professional advice must show that "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). In this regard, the mere fact that a professional prepared a return, without more, does not establish reliance on professional advice. See id. at 100 ("The mere fact that a certified public accountant has

_____

27(...continued)
production.

prepared a tax return does not mean that he or she has opined on any or all of the items reported therein."). Petitioner has adduced no evidence concerning what advice he received from H&R Block; he instead would have us infer that he relied on professional advice for purposes of reasonable cause by virtue of the fact that H&R Block prepared the return. We rejected such a claim in Neonatology Assocs., and we reject it here. We therefore conclude, with the exception of the specific findings of reasonable cause we made above, that petitioner has not established that he had reasonable cause with respect to any portions of the underpayment. Consequently, with respect to those portions, petitioner is liable for the accuracy-related penalty under section 6662(a) on the basis of negligence for 2010.[28]

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[28]As previously noted, respondent determined in the alternative that petitioner was liable for the sec. 6662(a) penalty for 2010 on the basis of a substantial understatement of income tax. To the extent that the Rule 155 computations demonstrate that there is an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000, we hold that, except with respect to those items for which we have held petitioner had reasonable cause, he is liable for the accuracy-related penalty on that basis as well.